MacDONALD et al. v. UNITED STATES.[1]

(Circuit Court of Appeals, Seventh Circuit. March 22, 1894.)

No. 149.

1. CRIMINAL LAW—APPEAL AND ERROR—REVIEW—INDICTMENT.
   Where an indictment contains three counts, to the first of which a motion to quash is overruled, and afterwards a bill of particulars is filed with the first count, which practically confines the prosecution to the more specific charges contained in the other counts, overruling the motion cannot be assigned as error.

2. SAME—EXCEPTIONS TO CHARGE.
   If a bill of exceptions states that an exception to the court's charge was taken when the charge was given, but discloses that it was not in fact taken until afterwards, the exception is not available.

3. SAME.
   Where the court instructs the jury that the issue is not whether the defendants' business was a cheat, but whether it was a lottery, the fact that the charge also states that the defendants' business was a cheat no better than highway robbery is not ground for reversal.

4. SAME—SENTENCE—JOINT ASSIGNMENT OF ERRORS.
   Where three defendants, who are jointly indicted, but separately sentenced to different punishments, join in a writ of error, and assign as error that "the court erred in the sentence which it passed upon the defendants," the assignment is too indefinite to present any question.

5. OFFENSES AGAINST POSTAL LAWS—LOTTERY—INDICTMENT—EVIDENCE.
   Where an indictment charges the defendants with sending through the mails circulars concerning a lottery, the prosecution may show by evidence outside the circulars that the business advertised therein was in effect a lottery.

6. LOTTERIES—GUARANTY INVESTMENT COMPANIES.
   Where the value of bonds in an investment company depends upon their number, and the numbering is done by the secretary according to the order in which the applications happen to reach him, the result of a purchase of such bonds is so dependent on chance as to render their sale a lottery.

Error to the District Court of the United States for the Northern District of Illinois.

Indictment of George M. MacDonald, Francis M. Swearingen, and W. H. Stevenson for sending through the mails matter concerning a lottery. Defendants were convicted, and they bring error.

The appellants, George M. MacDonald, Francis M. Swearingen, and W. H. Stevenson, were indicted, with others, tried,. convicted, and sentenced, for sending through the mails matter concerning a lottery. Rev. St. U. S. § 3894, as amended (26 Stat. 465). The indictment was returned October 14, 1893. The first count is general, and, formal parts omitted, charges that at Chicago the defendants, "unlawfully, did knowingly deposit and cause to be deposited in the post office of the United States there, and send and cause to be sent through the same, to be conveyed and delivered by mail, divers letters and circulars concerning a lottery, that is to say, ten letters and ten circulars, directed respectively to divers persons and addresses to the said grand jurors as yet unknown, and concerning a lottery in the same letters and circulars called the Guarantee Investment Company." The second count charges that the defendants, "unlawfully, did knowingly deposit and cause to be deposited in the post office of the said United States there, and send and cause to be sent through the same post office, to be conveyed and delivered by mail of the said United States, a certain envelope, then and there bearing

1 Rehearing denied October 27, 1894.

the address of Mr. J. J. McIntosh, Box 448, Chicago, Ill., which said envelope then and there contained a certain pamphlet concerning a lottery in the same pamphlet mentioned, and purporting to give, amongst other things, the plan of said lottery; which said pamphlet was and is of the tenor following, that is to say." The pamphlet, as set out in the indictment, contains, with other things, the following matter:

### "Copy of Bond.

"Know all men by these presents, that the Guarantee Investment Company of Nevada hereby promises to pay to —— or order, at its office in St. Louis, Mo., one thousand dollars, lawful money, at the time and on the conditions following, to wit: This is one of a series of bonds of like tenor, numbered consecutively from No. 1 to the number borne by this bond, sold and issued to the purchasers of the maker hereof. The holder hereof has paid for this bond ten dollars, and by accepting it agrees to pay the maker, at its home office in St. Louis, Mo., on the first day of each successive month hereafter, an installment of one dollar and twenty-five cents until this bond matures. A failure for fifteen days to pay said installment subjects the holder or owner of the same to a fine of one dollar, which, together with the omitted installment, must be paid within the next fifteen days in order to reinstate the said bond. And if the same is not done within the said time this bond becomes null and void and of no effect, and the said holder forfeits all payments and fines assessed thereon to the fund for the payment of this series of bonds. It is hereby guarantied by the maker of this bond that one dollar of all the monthly installments and all fines paid on the bonds of this series shall constitute a trust fund for the payment of the bonds of this company in the order and manner following: The first bond paid shall be bond No. 1, the second bond paid shall be bond No. 5, the third bond paid shall be bond No. 2, the fourth bond paid shall be bond No. 10, and so on, reverting back to the first issued unforfeited unpaid bond in this series, and alternating with the multiple 5 until all the bonds issued are paid; and said fund shall be honestly guarded and applied to such purpose, and shall not be impaired, used, or diminished for any other purpose whatever; and this bond, if unforfeited, becomes and is due and payable immediately after there are sufficient funds in said trust fund to pay it, all subsisting and uncanceled bonds issued and numbered prior to this having been paid.

"In witness whereof, the officers have hereunto subscribed their names and affixed the seal of the company thereto at its home office in St. Louis, Mo., this —— day ——, 18—.                                              ————, President.
     "[Seal.]                                                                ————, Secretary.

### "Table for Payment of Bonds.
#### "Copyrighted 1891, by J. G. Talbot.

| | | |
|---|---|---|
| 1 then 5 | 12 then 60 | 23 then 115 |
| 2 then 10 | 13 then 65 | 24 then 120 |
| 3 then 15 | 14 then 70 | then 125 |
| 4 then 20 | then 75 | 26 then 130 |
| then 25 | 16 then 80 | 27 then 135 |
| 6 then 30 | 17 then 85 | 28 then 140 |
| 7 then 35 | 18 then 90 | 29 then 145 |
| 8 then 40 | 19 then 95 | then 150 |
| 9 then 45 | then 100 | 31 then 155 |
| then 50 | 21 then 105 | 32 then 160 |
| 11 then 55 | 22 then 110 | 33 then 165 |

—"And continuing until the multiple extends beyond the number of bonds sold, when payment will revert back, and bonds will be paid in the numerical order, until, by additional sales of bonds, the suspended multiple is reached, when that number will be paid, and this manner of payment shall continue until all unforfeited uncanceled bonds issued are paid."

"Issuing of Bonds. We issue an investment bond on the following conditions: At the time application is made for a bond, the purchase price of $10.00 is paid to the agent taking the application, and a monthly installment of $1.25 is payable on the first day of the month following the date of said

application. If the installment is not so paid when due, a fine of $1.00 is levied against the holder of such bond, unless the same is paid within fifteen days, and if not paid in the next fifteen days then the said bond will be canceled on the books of the company for nonpayment. The company pledges the bondholder that out of the monthly installment of $1.25 paid, that 25 cents only shall be used for the payment of bonds in the order of their issue as follows: As soon as there is $1,000 paid into said trust fund, it shall be paid to the person holding bond entitled thereto by the table issued by this company (providing said bond has not been canceled for nonpayment), as follows: Bond No. 1 will be entitled to the first $1,000 paid into the trust fund, and bond No. 5 to the second $1,000; bond No. 2 to the third $1,000; bond No. 10 to fourth $1,000, etc., etc."

Thereupon the indictment proceeds: "And which said envelope also then and there contained a certain other circular, entitled 'The Guarantee Investment Company, Incorporated; September Bulletin, 1893,' concerning the same lottery, and purporting to give, amongst other things, a list of the prizes drawn at divers drawings of the same lottery theretofore held; and which said envelope also then and there contained a certain other circular entitled 'Application to The Guarantee Investment Co., of Nevada, Mo.,' and concerning the same lottery, and which said envelope also then and there contained a certain letter concerning the same lottery, and of the tenor following, that is to say." Then follows a copy of the letter.

The third count charges that the defendants, "unlawfully, did knowingly deposit and cause to be deposited in the post office of the United States there, and send and cause to be sent through the same post office, to be conveyed and delivered by mail of the said United States, a circular concerning an enterprise similar to so-called 'gift concerts,' offering prizes dependent upon lot and chance; that is to say, a circular directed to one George Houghton, at Downer's Grove, in the state of Illinois, by the direction and address following, to wit, 'Mr. George Houghton, Downer's Grove, Ill.,' and entitled and bearing on the outside of the cover thereof (amongst other things) the words 'The Guarantee Investment Company, Incorporated; September Bulletin,' and concerning an enterprise of that character in the same circular mentioned."

A motion of the defendants to quash the first count of the indictment was overruled. During the progress of the trial, at the conclusion of the evidence for the government, the district attorney, over the objection and exception of the appellants, was allowed to file a bill of particulars with the first count of the indictment, to the effect that the circulars and letter and envelope mentioned in the second and third counts were or would be relied upon for the support of the first count.

Collins, Goodrich, Darrow & Vincent, Barnum, Humphrey & Barnum, and Elisha Whittlesey, Jr., for plaintiffs in error.

Thomas E. Milchrist, U. S. Atty., and John P. Hand, Asst. U. S. Atty.

Before WOODS and JENKINS, Circuit Judges, and BAKER, District Judge.

WOODS, Circuit Judge (after stating the case). The practical effect of the bill of particulars filed with the first count of the indictment was to confine the prosecution to the more specific charges contained in the second and third counts. If, therefore, there was error in overruling the motion to quash the first count, it became an immaterial and harmless error,—as much so as if the count had been formally dismissed or withdrawn before the case was submitted to the jury.

The objection that the printed matter described in the indictment was admitted in evidence without previous proof of re-

sponsibility on the part of the defendants for the mailing of it is not supported by the record. When the offer was first made, it is true, the objection was interposed and overruled, as stated, and an exception taken; but no part of the matter was read to the jury until adequate proof had been made, by admissions and by the testimony of witnesses, that the mailing was done with the knowledge and by the authority of the defendants. In fact, when finally the evidence was given to the jury, the objection was not renewed, and no exception was taken to its introduction; and, even if there had been error in the first instance, it was cured by the proof afterwards made.

It is claimed next that the court erred in admitting evidence of the methods of business of the Guarantee Investment Company for the purpose of showing its scheme to be a lottery. The indictment containing no direct averment of the company's methods of business, it is insisted that the charge that the defendants sent through the mails circulars concerning a lottery means that the circulars, on their face, showed or purported to concern a lottery, and that other evidence of the fact was therefore incompetent. This position is plainly untenable. Any proper evidence upon the point, whether found on the face of the papers or elsewhere, was admissible on behalf of the government, just as it was competent for the defendants, and would have been even if the circulars had purported to concern a lottery, to show that in fact the scheme was not of that character.

It is assigned as error "that the verdict is against the law," and, to make this out, it is insisted that the business of the investment company, "as set forth in the pamphlet in the indictment, is not a lottery, within the meaning of the law." The essential question, as we have seen, is, what was the nature of the business, as shown by the entire evidence, and not merely as set forth in the pamphlet, and, under proper instruction, that was a question of fact concerning which this court, following the well-settled practice of the supreme court, will not review the evidence, when sufficient, as it was in this case, to go to the jury in support of the verdict. Crumpton v. U. S., 138 U. S. 361, 11 Sup. Ct. 355.

This brings us to the court's charge to the jury, and in respect to that we are constrained to observe that no question is properly presented. The record shows that at the conclusion of the charge the defendants gave notice "that they would except to the charge;" and thereupon the court stated the practice of the court to be that objections to the charge should be stated before the jury retired, but that the court would permit the bill of exceptions to show objections to all the substantial portions of the charge, though not then specified, except portions which might have been the result of mere lapse or inadvertence, or which, in view of the whole trial, would have probably been corrected if the court's attention had been called to them before the jury retired, and that, subject to this limitation, counsel might have time to prepare their exceptions. When afterwards the bill of exceptions was presented to the judge for settlement, with various objections to different parts of the charge, some were allowed, and appear in the bill as if stated before the jury had retired.

Other objections the judge refused to allow, because they were not presented in time, and to that refusal "the defendants then and there excepted," and have assigned it as error. , We are aware that out of considerations of convenience and accommodation, and by acquiescence of opposing parties, the trial courts sometimes permit bills of exceptions to show objections and exceptions as if they had been announced at the time of the ruling complained of, and on appeal in such cases the record must be accepted as true; but when, as in this instance, the facts are all disclosed, it is impossible to recognize the exceptions as valid. We have, however, considered the principal objections to the charge of the court, and are convinced that there was no error which could have been made available upon proper exception. The court, it is true, employed strong language, to the effect that the Guarantee Investment Company was a cheat, doing things no better than highway robbery; that, by its very constitution, its success depended upon its insolvency, and a wholesale repudiation of its promises,—and used other expressions which, it is claimed, were both inaccurate and unfair, and calculated to inflame the minds of the jurymen against the defendants. It is apparent, however, that these portions of the charge were, in part at least, responsive to the argument and insistence of counsel for the defendants that the scheme and business of the company were honorable and fair, and the court was careful to explain that the question at issue was not whether the business was a cheat, but was it a lottery? "It may be a cheat," said the court, "but we must ascertain by the legal canons and definitions whether it was a lottery;" upon the whole charge it is impossible to believe that the jury could have misapprehended the issue.

Continuing on the subject, the court said: "What is a lottery? The best definition I can find for it is this: 'When a pecuniary consideration is paid, and it is determined by chance or lot, according to a scheme held out to the public, whether he who pays the money is to have anything for it, and, if so, how much, that is a lottery.' "

Upon this definition, which was inaccurate if at all because it was not as comprehensive as it might have been, the question whether or not the investment company was conducting a lottery was one for the jury; and, if we could be required to review the evidence, we would not disturb the verdict. It is insisted that the element of chance is wanting in the scheme, but its presence is manifest. It is not present primarily in the uncertainty of the time when a bond will be paid, because, once bonds have been issued, the order of payment is governed by a fixed rule, and the time of payment is uncertain only so far as it depends upon the amount of business done by the company, and the number of lapses of bonds of earlier issue. The element of chance which condemns the scheme is incident to the numbering of the bonds before issue, and not directly to their payment afterwards. By the table, which determines the order of payment, bond numbered one is payable first, No. five next, No. two next, and so on, alternating between numerals, so-called, and multiples of five, except, it will be observed, that between every

fourth and fifth of the multiples no numeral intervenes. There are four numerals to every multiple, and it follows that a bond (which might as well be called a ticket) bearing a high multiple number will be entitled to payment sooner than three-fourths of the bonds bearing lower numbers among the numerals, and the further the process is carried the greater becomes the disparity between the multiple and numeral numbers next to be' paid, and correspondingly the bonds numbered with numerals, except as benefited by lapses, become less and less valuable, because the day of possible payment becomes more and more remote. Now, whether or not a purchaser will obtain a bond of one number or another depends, as the evidence very clearly shows, upon the order in which his application shall reach the hand of the secretary, and that is largely a matter of chance. The secretary receives applications by mail and otherwise, sometimes singly and sometimes a number together, and in the order of receipt, and, as he chances to take up one or another first, passes them through a registering device, and in accordance with the notations thereby made upon the applications the bonds are numbered and issued. But for the purchaser's hope, or, as it may as well be said, for his chance, of getting a multiple number, the business would soon cease. "The multiple system is a new invention," said a witness for the defendants, "a table, copyrighted, to make the inducement for a person to purchase a bond at one time just as great as at another;" and, however disguised in words, it is evident that the inducement consists mainly in the chance of obtaining a multiple number. It was insisted at the hearing that since every bondholder who shall continue to pay his dues will ultimately receive the promised sum, the prizes are equal, and therefore there is no lottery. But it is idle to say that a sum or an obligation for a sum due and payable to-day or at an early day is of no more value than an obligation for an equal amount, without interest, payable at a remote and indefinite time. Reference has been made to Horner v. U. S., 147 U. S. 449, 13 Sup. Ct. 409, but, in the elaborate presentation there made of the subject, we find nothing which we deem inconsistent with our views of the present case.

The court was asked to instruct the jury that, "if the only element of uncertainty was as to the date at which the bonds matured or were to be paid, it was not sufficient to characterize the business of the defendants as a lottery." This and similiar requests were properly refused, because they presented an immaterial question, and ignored the element of chance incident to the numbering of the bonds before they were issued. Only in that phase of the scheme did the court, by its charge, suggest, or leave it to the jury to find, the presence of chance; and of its existence there the proof is so clear that all collateral questions sought to be raised either upon the instructions given and refused, or upon the evidence, may be regarded as immaterial. Indeed, if it were ever permissible in a criminal case that the court should direct a verdict of conviction, it might have been done in this instance. The evidence is without conflict.

It was. assigned for error, and is insisted upon, that "the court erred in the sentence which it passed upon the defendants." This is too general and indefinite upon its face to present any question, and when applied to the facts of the case it is still more uncertain. The court passed no sentence upon the defendants, but a separate sentence upon each,—upon Swearingen and Stevenson, each, a fine of $200, and, upon MacDonald, imprisonment in the county jail for eleven months, and a fine of $1,000. Which one or what part of these sentences it was intended to question, the assignment does not indicate. In the brief objection is made to the sentence upon MacDonald only, and because the fine is double the amount of the maximum authorized by the statute for each offense. It is said to be "impossible to tell from the record whether the court did this inadvertently, or proceeded upon the theory that MacDonald was indicted and convicted of two separate offenses, and imposed a cumulative sentence," and for this reason, it is contended, the judgment must be reversed, and the case remanded, not for resentence, but for a new trial. This is a question in which MacDonald alone is interested, and the assignment of error should have been by him or in his behalf only, and should have stated specifically his objection to the sentence. See Whiting v. Cochran, 9 Mass. 531; Porter v. Rummery, 10 Mass. 64; Shirley v. Lunenburg, 11 Mass. 379; Shaw v. Blair, 4 Cush. 97; Jaqueth v. Jackson, 17 Wend. 436; Henrickson v. Van Winkle, 21 Ill. 274. Though indicted and tried together, the defendants were entitled to separate appeals; and, the sentences against them being necessarily individual and several, there can be no necessity for steps to effect a severance, as in civil cases, when the judgment is joint against two or more. Estis v. Trabue, 128 U. S. 225, 9 Sup. Ct. 58. If, however, there was error, as now claimed, it was more of form than of substance; and, if we were compelled to remand the case, it would be simply for resentence. The appellant was convicted by a general verdict upon an indictment which contains at least two distinct charges, which were properly joined. Rev. St. U. S. § 1024; In re Henry, 123 U. S. 372, 8 Sup. Ct. 142. The fine does not exceed the sum of the several sentences which might have been awarded, and according to the decision in Carlton v. Com., 5 Metc. (Mass.) 532, that was legal; and in the case of In re Henry, supra, the supreme court, referring to the provision in section 5480 of the Revised Statutes, that three distinct offenses may be joined in the same indictment, said:

"In its general effect this provision is not materially different from that of section 1024 of the Revised Statutes, which allows the joinder in one indictment of charges against a person 'for two or more acts or transactions of the same class of crimes or offenses,' and the consolidation of two or more indictments found in such cases. Under the present statute, three separate offenses, committed in the same six months, may be joined, but not more, and when joined there is to be a single sentence for all."

The general rule seems to be that there should be a separate sentence for each offense. Bish. Cr. Proc. §§ 1326, 1327; Mullinix v. People, 76 Ill. 211. See, also, Blitz v. U. S., 153 U. S. 308, 14 Sup.

Ct. 924. But, as already explained, the question is one we are not called upon to decide. There is no essential or available error in the record, and the several judgments below are affirmed.