UNITED STATES v. PURVIS et al.

(District Court, N. D. Georgia. March 1, 1912.)

No. 12,413.

1. INDICTMENT AND INFORMATION (§ 125*)—DUPLICITY.

An indictment under Pen. Code, § 213 (Act March 4, 1909, c. 321, 35 Stat. 1129 [U. S. Comp. St. Supp. 1911, p. 1652]), punishing the depositing in the United States mails of letters concerning lotteries, which alleges that accused "deposited or caused to be deposited in the post office" a letter set out, is not bad for duplicity.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 334–400; Dec. Dig. § 125.*]

2. POST OFFICE (§ 48*)—OFFENSES—USE OF MAILS FOR LOTTERY PURPOSES—INDICTMENT.

An indictment, alleging that accused did "unlawfully and knowingly deposit and cause to be deposited in" a post office a letter concerning a lottery, sufficiently charges knowledge of accused of the contents of the letter; the word "knowingly" qualifying not only the verb "deposit," but the whole matter described subsequently in the indictment.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 66–80; Dec. Dig. § 48.*

Nonmailable matter, see note to Timmons v. United States, 30 C. C. A. 79; McCarthy v. United States, 110 C. C. A. 548.]

3. LOTTERIES (§ 3*)—ACTS CONSTITUTING.

A company operated a scheme containing investment and loan features. The opportunity to obtain a loan was determined to a large extent by the way in which the applications were received at the office of the company, and where a number of applications were received at the same time they were put on the records of the company as they were opened and recorded. The investment features were not particularly attractive, and the main feature of the scheme was the loan feature, and the proposed loan contracts contained attractive terms. Held, that the scheme was a lottery because of a consideration and because of the existence of chance, based on obtaining a low number and thereby obtaining a loan, and because the obtaining of a loan at an early date was the prize in the scheme, since to constitute a lottery there must be a consideration, chance, and prize.

[Ed. Note.—For other cases, see Lotteries, Cent. Dig. § 3; Dec. Dig. § 3.*

For other definitions, see Words and Phrases, vol. 5, pp. 4245–4252; vol. 8, pp. 7710, 7711.]

R. Purvis and another were indicted for crime. Demurrer to indictment overruled.

John W. Henley, Asst. U. S. Atty.

Tye, Peeples & Jordan, J. D. Kilpatrick, Geo. F. Gober, Evins & Spence, and J. E. & L. F. McClelland, for defendants.

NEWMAN, District Judge. This is an indictment under section 213 of the Federal Penal Code of 1910, which provides that:

"No letter, package, postal card, or circular concerning any lottery, gift enterprise, or similar scheme offering prizes dependent in whole or in part upon lot or chance * * * shall be deposited in or carried by the mails of the United States, or be delivered by any post master or letter carrier"— and then fixing a penalty for the violation of the section.

There is a demurrer to the indictment upon several grounds.

[1] The first ground I will refer to, as it is easily disposed of, is that the charge in the indictment that the defendants "deposited or caused to be deposited in the post office" the letter set out in the indictment is bad for duplicity. This, as I understand it, is not insisted upon; but, even if it should be, this objection to the indictment is clearly not well taken.

[2] The next ground of demurrer which may be considered is that the indictment does not sufficiently charge knowledge on the part of the defendants of the contents of the letter, the basis of the indictment.

The language of the indictment is "did then and there unlawfully and knowingly deposit and cause to be deposited in the post office at Atlanta, Ga.," etc. The contention is that the word "knowingly" as there used only qualifies the verb "deposit" and not the succeeding language of the indictment setting out the character of the contents of the inclosure. In many cases in which it was charged in the indictment that the defendant "did knowingly deposit in the post office" a certain letter, and then proceeds to state "which said letter contained certain unmailable matter," describing it, it is held that the word "knowingly" not only qualifies the verb "deposit," but the whole matter described subsequently in the indictment. 13 Enc. Pl. & Pr. 395.

In United States v. Clark (C. C.) 37 Fed. 106, 107, Mr. Justice Brewer, Circuit Judge, stated the rule as he understood it as follows:

"Doubtless the question turns largely upon whether the word 'knowingly,' as used in the statute and the indictment, qualifies simply the adjacent verb 'deposit,' or the whole matter described. It may be conceded that ordinarily an adverb is understood to qualify its adjacent verb; and yet that is not always true, and in construing words and sentences used in an indictment we are to give them their ordinary significance, in the absence of some technical construction necessarily imposed upon them. Now, it is a familiar use of the verb 'knowingly' that it qualifies both its adjacent verb and the full act thereafter described. A few simple illustrations will make this clear: I say that a party knowingly told a lie. Every one understands from that that I mean that the party has stated that which he knew to be a lie, and not simply that he stated that which was in fact untrue, yet unknown to him to be untrue. And in the same way, when I say that a party knowingly deposited an obscene picture, no one supposes that I mean that he simply deposited a picture, the character of which he was ignorant of. All understand that I mean to say that he has deposited that which he knew to be obscene; and this because the adverb 'knowingly,' used in sentences of this kind, by the common understanding of all, goes beyond the mere verb, and includes broadly all that is expressed in the full act charged to have been done."

In United States v. Fulkerson (D. C.) 74 Fed. 619, 626, Judge Wellborn, in the Southern district of California, discusses and disposes of this question in the following language:

"With reference to the second objection stated, I am of opinion that the words of the indictment, 'did knowingly deposit,' etc., in their ordinary acceptation, mean that defendants knew that the matter which they are alleged to have deposited in the post office concerned a lottery. On this point I shall follow, not the ruling in U. S. v. Slenker (D. C.) 32 Fed. 691, but the view expressed by Mr. Justice Brewer, as follows: (Quoting the language given above.)"

To the same effect is 1 Bishop, Crim. Procedure, § 504; United States v. Nathan (D. C.) 61 Fed. 936–938; Shepard v. United States, 160 Fed. 584, 588, 589, 87 C. C. A. 486; Konda v. United States, 166 Fed. 91–92, 92 C. C. A. 75, 22 L. R. A. (N. S.) 304.

It is urged that some of these cases are cases for using the mails to convey obscene literature, and that this makes a distinction between those cases and the present case. I think an examination of the cases will show that, while it is true that a number of the cases were for mailing obscene literature, the rule of criminal pleading as stated is as applicable in the present case as in that class of cases.

[3] The main ground of demurrer, and the one to which the very able and thorough argument in the case has been directed, is that the facts set out in the indictment and in the "loan investment contract" made a part of the indictment do not consitute a lottery or similar enterprise. This is the principal and serious question for determination here.

In order to constitute a lottery, there must be a consideration, chance, and prize. That is to say, a person must pay something for the opportunity to try for a prize by chance or lottery. Does the scheme now under consideration come within this definition?

Very clearly there was a consideration, and this is conceded by defendant's counsel.

The opportunity to obtain a loan, which seems to have been the main feature of this scheme, was determined to a large extent by the way in which the applications for loans were received at the office of the company; that is to say, if a number of applications for loans were received at the same time, by the same mail, they were put on the records of the company as they were opened and numbered, and it was of course a mere matter of chance as to which the officer, or the clerk engaged in this work, should take up first, as he opened and entered them. It is generally held by the courts that this is chance, such chance as is necessary to constitute that element of a lottery.

In MacDonald v. United States, 63 Fed. 426, 431, 12 C. C. A. 339, 344, which was a lottery case, and in which a verdict of guilty was affirmed by the Circuit Court of Appeals, this is said in the opinion:

"Now, whether or not a purchaser will obtain a bond of one number or another depends, as the evidence very clearly shows, upon the order in which his application shall reach the hand of the secretary, and that is largely a matter of chance. The secretary receives applications by mail and otherwise, sometimes singly and sometimes a number together. and in the order of receipt, and, as he chances to take up one or another first, passes them through a registering device, and in accordance with the notations thereby made upon the applications the bonds are numbered and issued."

In United States v. Fulkerson, supra, Judge Wellborn, in discussing this question, says:

"The element of chance, however, is specifically and clearly discernible in the facts that the numbers of the coupons which any particular applicant received depends upon the order in which his application goes in to the company, and that the determination of what coupons shall be paid is made to depend upon a device of numbers, whose operations are such that it is utterly impossible for any one to know the result, until the same has been accomplished. It is true that no wheel is employed, from which, at stated periods;

tickets are drawn; but the machinery of the scheme, embracing the postal establishment of the United States, is perpetually in motion, and the prizes, in the shape of so-called 'matured coupons,' continually distributed to those who secure the lucky numbers."

Judge Wellborn quotes from the opinion of Judge McComas in United States v. Sherwood, in the Supreme Court of the District of Columbia, which case, it appears, has not been reported, in which Judge McComas says:

"The plan of this National Investment Society, as set forth in the letter, circulars, and by-laws, shows that it is impossible for the members to share equally in the funds, and that the more fortunate applicants are those whose certificates bear the earliest numbers; that the numbers of the certificates, and their consequent value, depends upon chance. In different states, applicants, on the same day, may mail subscriptions for certificates in this company. Whether or not an applicant will receive a certificate of one number or another depends upon the order in which the applications may reach the officer of this company who issues the certificates, and that is a matter of chance. This officer received these applications by mail, or otherwise. It may be one at a time; it may be many at the same time; and, according to the order in which he chances to receive them, or as he chances to take up one or another, and determines the number of each applicant's certificate, the certificates are numbered and issued. He who by these chances luckily receives an earlier number will be paid sooner, and will pay in less money than another, who, subscribing on the same day, receives a later number, and will by these chances be required to pay longer and more' money, and wait longer for payment of his shares. It is this element of chance in numbering the certificates which I believe to be a violation of this anti-lottery law. It is evident that the inducement to subscribe consists mainly in the chance of securing an early or lucky number. As in Ballock v. State, 73 Md. 1, 20 Atl. 184 [8 L. R. A. 671, 25 Am. St. Rep. 559], approved in Horner v. U. S., 147 U. S. 463, 13 Sup. Ct. 409 [37 L. Ed. 237]: 'It cannot be said this is not a species of gambling, and that it does not tend, in any degree, to promote a gambling spirit. It certainly cannot be said that it is not in the nature of a lottery, and that it does not tend to create a desire for other and more pernicious modes of gaming.' The element of chance which condemns this scheme as a lottery, or similar enterprise, dependent upon chance, is incident to the numbering of the certificates before issue, and not directly to their payment afterwards."

In State v. Nebraska Home Company, 66 Neb. 349, 92 N. W. 763, 60 L. R. A. 448, 103 Am. St. Rep. 706, 1 Ann. Cas. 88, the court considered the scheme by which the company agreed and undertook to assist the holder of a contract in purchasing and paying for a home. In delivering the opinion of the court in this case, Judge Sedgewick said:

"The question, then, is whether the element of chance enters into' the scheme by which one contract holder obtains this advantage over another. The contracts are to be numbered and dated 'in regular numerical order as applications are received at the home office.' The applicant must take his chances as to how many applications may be received at the same time that his is received, and, if there are several at the same time, he must take the chance of preference over other applications received with his."

In Fitzsimmons v. United States, 156 Fed. 477, 479, 84 C. C. A. 287, 289 (13 L. R. A. [N. S.] 1095), in the opinion of the Circuit Court of Appeals, by Circuit Judge Gilbert, it is said:

"It is plainly to be seen that, in the scheme under consideration, it may happen that several new members may send in their first subscriptions on the

same day, and that he whose subscription is by chance first numbered may obtain a greater advantage over him whose number is last. That advantage is undoubtedly in the nature of a prize."

Afterwards in the opinion this is added:

"The uncertainty lies in the time when he shall receive it, an uncertainty so great as to vitiate the scheme as fully as would an uncertainty in the amount."

In Equitable Loan Company v. Waring, 117 Ga. 599, 662, 44 S. E. 320, 346, 347 (62 L. R. A. 93, 97 Am. St. Rep. 177), Judge Cobb, delivering the opinion of the majority of the court, says:

"If the plan had been to pay certificates in their numerical order, there would have been the same element of chance as there is under the plan actually pursued, because the time at which the certificates shall be called would be governed in each instance by the order in which the applications reach the secretary and numbers are placed upon the certificates."

It is unnecessary to multiply authorities upon this question because nearly all pertinent authority, certainly the great weight of it, is to the same effect as the cases referred to.

We find, therefore, that the elements of consideration and chance exist in this scheme. Was there a prize? There is little doubt from an examination of this loan contract, taken in connection with the charges made in the indictment, that the main feature of this scheme was the loan feature. It was the desire to obtain loans on the very attractive terms proposed by the defendants which made these contracts so much favored and which induced the purchase of these loan contracts. There was nothing particularly attractive about the investment feature. Anywhere in this country money could be deposited in perfectly solvent and reliable savings institutions on equally as good and perhaps better terms. The attractive thing, necessarily so, was the loan feature. The chance of getting a low number and thereby obtaining a loan at an early date was the prize held out in this scheme. Anything of value may constitute a prize. That the chance of obtaining one of these loans was considered a valuable thing is clear. Prize combined with the other features, chance and consideration, which have been found to exist, make this scheme a lottery.

In my judgment the indictment states a case for carrying on a lottery or similar enterprise, in violation of section 213 of the new Criminal Code. Consequently the demurrer to the indictment must be overruled upon all the grounds stated therein.