**BOASBERG v. UNITED STATES.**

**No. 6381.**

Circuit Court of Appeals, Fifth Circuit.
July 13, 1932.

Rehearing Denied Aug. 26, 1932.

FOSTER, Circuit Judge, dissenting.

Edwin H. Grace, of New Orleans, La., for appellant.

E. E. Talbot, U. S. Atty., and W. S. Benedict, Asst. U. S. Atty., both of New Orleans, La.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

The appellant was convicted by a jury for mailing a circular concerning a scheme similar to a lottery, to wit, playing "keno," in violation of 18 USCA § 336. Errors mainly urged are the overruling of a demurrer to the indictment, of a motion to instruct a verdict of not guilty, and one to arrest the judgment. The words of the section here material are: "No letter, package, postal card, or circular concerning any lottery, gift enterprise, or similar scheme offering prizes dependent in whole or in part upon lot or chance * * * shall be deposited in or carried by the mails of the United States. * * * Whoever shall knowingly deposit or cause to be deposited * * * anything herein forbidden to be carried by mail, shall be" punished as stated. The indictment alleges that the accused willfully and knowingly deposited in the mail at New Orleans on January 31, 1930, "a circular and advertisement concerning a scheme offering prizes dependent upon lot or chance similar to a lottery addressed to George M. Carnes, etc., reading as follows: 'Suburban Gardens Will Inaugurate a New Innovation for the Better People of New Orleans Keno $100.00 or More to the Winner Every Roll Commencing February 5th, 1930. Doors open at 6:30 P. M., first game at 7 P. M. M. Boasberg.'" There follow allegations that keno is a well-known gambling game

played by each player buying from the keeper at a fixed price one or more checkered cards, fifteen of the checkered spaces on each card bearing numbers, and the others being blank; the keeper or his agent draws a number from a bag or globe which is announced, and each player covers that number on his cards if he has it; and this proceeds until some player first gets all the numbers on a card or in a row of a card, according to the rule adopted, when he calls "keno," and on verification the stakes of all the players less the keeper's percentage go to him as winner. It was proven without dispute that appellant, who was the proprietor of Suburban Gardens, an amusement place, had mailed out 1,500 or 1,800 such circulars to young men whose addresses had been gotten from the membership lists of several New Orleans clubs.

■ Over objection for irrelevancy, testimony was received that keno was usually played as set forth in the indictment. Although keno is defined and described in some English dictionaries and encyclopedias about as set forth in the indictment, the word not being mentioned in the statute is not a term of which the judges need profess or confess their knowledge. Its meaning was properly alleged in the indictment, and, having been alleged, was proper to be proven. The evidence objected to tended to explain the meaning of the circulars which were mailed a week before the games were to begin.

■ It is urged that the indictment does not sufficiently describe the scheme which the circulars concerned. The indictment initially alleges that it was a scheme offering prizes dependent upon lot or chance similar to a lottery, in the words of the statute, which is quite indefinite. But the circular as set forth itself states that it concerned proposed games of keno, which the indictment then interprets as above stated, and ends by charging that appellant "then and there well knew said keno to be a gambling game dependent on lot or chance and similar to a lottery." One could hardly fail to understand from all of this that the described keno game was the scheme meant. Certainly no surprise resulted, for the defendant admitted having had that scheme. We could not award a new trial for this fault of pleading, if it be such, consistently with 28 USCA § 391.

■ The real question is whether a scheme to run keno games is a scheme offering prizes dependent in whole or in part upon lot or chance, and similar to a lottery or a gift enterprise. The legislation was no doubt provoked by the interstate and international lotteries which operated on a great scale and largely by means of the mails. The gift enterprises were frequently so conducted also, but the statute as reframed by the Criminal Code adopted in 1909, § 213 (18 USCA § 336), the former legislation being repealed by section 341 (35 Stat. 1153), does not limit itself to interstate enterprises or to large ones, or to those to whose operations the use of the mails is necessary, nor does it stop with lotteries and gift enterprises, but extends to similar schemes offering prizes dependent in whole or in part upon lot or chance. To be like a lottery there must be something staked, a larger possible winning, and the winning or losing must depend on lot or chance and not on skill or judgment. See 23 Op. Attys. Gen. 200, 207, 492. Gambling schemes where winning depends on skill or judgment are not like a lottery in which success is determined by pure chance and is thus specially attractive to the inexperienced and the ignorant. But we think keno is within the schemes covered by the statute. Each player buys a card analogous to a lottery ticket. He expects to win a prize produced by the contributions of all other buyers, and who will win depends on the pure chance of what numbers are first drawn. It is a lottery where winning hangs, not on one lucky draw, but on several. It is said that one must be present to win at keno. He may be present, but need not be at most lottery drawings. Gift enterprises very commonly require the holder of tickets to be present at the award. A factor so inconstant cannot be the basis of a distinction. While the use of the mails has not been denied to every form of gambling, we think a scheme to play keno cannot lawfully be served by them.

Judgment affirmed.

FOSTER, Circuit Judge (dissenting).

I think the indictment was demurrable, but will pass that without discussion for the more important question of whether the defendant was guilty of any offense against federal laws.

Affirmance of the conviction in this case depends upon whether the game of keno is a scheme similar to a lottery or gift enterprise. Manifestly, a game of keno is not a lottery within the usual meaning of that term. In a lottery one buys a ticket for a consideration in the hope of winning a prize offered by the seller. A contract is thereby created which obligates the person conducting the lottery to pay the prize, if one is drawn by the ticket, regardless of whether the opera-

tion of the lottery is profitable or not. The ticket is a species of property that may be again sold and transferred by the purchaser. Francis v. U. S., 188 U. S. 375, 23 S. Ct. 334, 47 L. Ed. 508; Lottery Case, 188 U. S. 321, 23 S. Ct. 321, 47 L. Ed. 492. The authorities all hold that the three elements of a lottery are, first, prize; second, consideration; and, third, chance. See Eastman v. Armstrong-Byrd Music Co. (C. C. A.) 212 F. 662, 52 L. R. A. (N. S.) 108, and authorities cited.

The circular set out in the indictment mentions that a prize will be paid. But the description of the game, also contained in the indictment, makes it certain that this prize was not to be given by the person conducting the game. It was to result from the winning of a pool to which the players contributed and bet against each other. Of course, in keno there is the element of chance as there is in all games. However, it is evident the player pays no consideration for the cards he uses and they do not become his property. The operator of the game charges a commission for their use and his services, but is under no obligation to pay anything at all. It would be a strained construction to hold that there is a prize or consideration paid for the chance of winning similar to a lottery. These two elements necessary to constitute a lottery are absent.

The statute is highly penal and is to be strictly construed. France v. U. S., 164 U. S. 676, 17 S. Ct. 219, 41 L. Ed. 595. In construing the statute it is necessary to keep in mind the evil sought to be remedied to determine the intent of Congress in adopting the legislation. The statute, section 213, Criminal Code (18 USCA § 336), as originally enacted (Act June 8, 1872), prohibited the mailing of any letter or circular concerning any illegal lottery. At that time legal lotteries were being conducted in many foreign countries and in the United States, in Kentucky and Louisiana. The word "illegal" was eliminated by the Act of July 12, 1876. Subsequent amendments have been adopted to further prohibit the use of the mails and also transportation in interstate commerce. The whole intent of the legislation was to restrict the operation of lotteries, and it was aimed particularly at the Louisiana state lottery.

Keno or lotto, which terms are interchangeable, is a well-known game played by many persons in homes. It is reasonable to suppose that, if Congress had intended the game of keno to come within the prohibition of the statute, they would have said so rather than to have left it to be classed as a scheme similar to a lottery. Certainly Congress had no intention to close the mails to letters or advertisements concerning all gambling games. If keno is to be considered a lottery, the sending of a letter by a host inviting his friends to a lotto party would be a violation of the statute. The mails would also be closed to advertisements of stores selling the game. In my opinion Congress did not so intend.

I conclude that the mailing of the circular set out in the indictment did not constitute an offense under the statute. For these reasons I respectfully dissent.

PER CURIAM.

As neither of the judges who concurred in the judgment of the court in the above numbered and entitled cause is of opinion that the petition for rehearing should be granted, it is ordered that the said petition be, and the same hereby is, denied.