UNITED STATES v. RICH et al.

UNITED STATES v. CAMARRATA et al.

Cr. Nos. 17246, 17247.

United States District Court
E. D. Illinois.
April 3, 1950.

William W. Hart, United States District Attorney, Ray M. Foreman, Assistant U. S. District Attorney, Danville, Ill., Ernest R. McHale, Assistant U. S. District Attorney, East St. Louis, Ill., on behalf of the United States.

Max Sigoloff, St. Louis, Mo., Morris A. Shenker, St. Louis, Mo., on behalf of the defendants.

WHAM, Chief Judge.

The above cases present the same fundamental issue for decision. The indictment in each case charges the defendants with unlawful use of the mails in violation of section 1302 of Title 18 of the United States Code Annotated. Each indictment also contains a count charging a conspiracy to violate the same statute.

Defendants, in each case, have filed their motion to dismiss the indictment as being insufficient both in form and substance. Though open to criticism, both indictments seem to state the offenses therein charged in terms which inform the defendants of the offenses with which they are charged so as to enable them to prepare their defenses; also to protect them against any possible double jeopardy. Without setting forth any factual details of the scheme the indictment in each substantive count charges the offense in the words of the statute

and exhibits the objectionable mail matter alleged to have been mailed in violation of the statute. From the matter alleged to have been mailed the character of defendants' business sufficiently appears to enable the court to determine whether the conclusion in the indictment that the mail matter concerns a lottery, gift enterprise, or similar scheme within the meaning of the statute has foundation. The alternative pleading of the offense in the words of the statute is not bad as used here for the reason that the terms "lottery, gift enterprise, or similar scheme", as used in the statute and in the indictment, in the final analysis, is but a single broad term applicable only to a scheme having the essential characteristics of a lottery though it may differ ever so radically in form from the usual lottery. The conspiracy count in each indictment, though awkwardly drafted, when taken as a whole states the real conspiracy the pleader had in mind.

From the face of the indictments it appears that, in each case, the defendants are engaged in "bookmaking" activities in connection with which bets or wagers are solicited and taken on the outcome of sporting events such as horse racing and baseball, as well as upon elections and other events of uncertain outcome. They use the mails in advertising and in conducting those businesses. It is such uses of the mails that are charged in these indictments as violations of said section 1302, which, as far as pertinent, reads:

"Whoever knowingly deposits in the mail, or sends or delivers by mail;

"Any letter, package, postal card, or circular concerning any lottery, gift enterprise, or similar scheme offering prizes dependent in whole or in part upon lot or chance;

"Any lottery ticket or part thereof, or paper, certificate, or instrument purporting to be or to represent a ticket, chance, share, or interest in or dependent upon the event of a lottery, gift enterprise, or similar scheme offering prizes dependent in whole or in part upon lot or chance; .

&ast; &ast; &ast; &ast; &ast; &ast;

"Shall be fined", etc.

Unless the activities of the defendants, as shown on the face of the indictments, come within the meaning of the words "lottery, gift enterprise, or similar scheme", as used in the statute, the indictments cannot be upheld. Their schemes must have the general characteristics of a lottery. The statute being highly penal its terms must receive strict construction and its reach limited within its meaning as so construed.

Definitions of a "lottery" generally agree that it is a scheme for the distribution of prizes by lot or chance and that the essential elements of a lottery are (1) consideration, (2) prize, and (3) chance. As reiterated in different parts of the statute here under consideration it is aimed at schemes offering prizes dependent in whole or in part upon lot or chance. Do the schemes of bookmaking as shown to have been operated by defendants in the indictments constitute schemes for the distribution of prizes by lot or chance and in them do we find the essential elements of consideration, prize and chance?

"Bookmaking", as applied to horse racing, has been defined as follows: "It is a business in which the bookmaker offers bets at certain odds on particular horses in the races and takes all such bets as persons may choose to make with him at the odds offered and upon the receipt of money from the persons willing to bet with him, the bookmaker issues tickets to them showing the terms of the bet, and, if the horses backed by the bookmaker lose, he pays the winners, and if the horses win, he keeps the money received from the customers and pays out nothing." 27 C.J. Sec. 60, p. 979, Footnote 26, 38 C.J.S., Gaming, § 1.

Except as to bets offered on horses that may not run, the bookmaking schemes of defendants, as shown by the indictments, appear to have been operated substantially within the terms of the above definition whether applied to horse racing or to other events.

When an individual places a bet with the bookmaker each stands to win or lose dependent on the outcome of the event. In such transaction a consideration is paid by

the individual in the form of a stake which he risks on the uncertain outcome of the event in hope of winning more.

■ It has been said, and perhaps it is as nearly an accurate definition as can be framed, that as applied to a lottery scheme a prize may be anything of value offered as an inducement to participate in the scheme. Wherefore, for the purposes of this decision, under the broadened conception of a lottery scheme, the winnings the bettor hopes to receive constitutes a prize within the meaning of the lottery statute. Since there appears to be a consideration and a prize, within the meaning of the statute, it would seem that whether bookmaking as conducted here is a lottery or similar scheme offering prizes dependent in whole or in part upon lot or chance depends upon whether it can be said that under defendants' schemes the winnings, if any, are awarded, or distributed by "lot or chance", as those words are used in the statute.

■ It has been said concerning "chance" that "as one of the essential elements of a lottery, the word has reference to the attempt to attain certain ends, not by skill or any known or fixed rules, but by the happening of a subsequent event, incapable of ascertainment or accomplishment by means of human foresight or ingenuity." 17 R.C.L. 1223. The most common illustration of lot, or chance, in the sense those terms are used in the definition of a lottery, is the drawing of a number from a container holding many numbers, by a blindfolded person. Other illustrations drawn from court decisions may be used. In this circuit District Judge Grosscup, in oral instructions to a jury, United States v. McDonald, D.C., 59 F. 563, 565, affirmed, MacDonald v. U. S., 7 Cir., 63 F. 426, discussed in philosophical fashion the issues involved in a prosecution under the federal lottery statute as it was in 1893, 26 Stat. 465, as applied to a scheme wherein the value and the ultimate payment, of bonds purchased by investors were made dependent upon the bonds receiving certain numbers and the numbers given the bonds were determined by the order in which applications for the bonds were registered as received. He said, in part, after describing the scheme:

"There is no doubt, gentlemen, upon the face of it, that it constitutes a cheat. * * But that does not prove that it is a lottery. It may be a cheat, but we must ascertain by the legal canons and definitions whether it is a lottery. What is a lottery? * * * Where a pecuniary consideration is paid, and it is determined by chance or lot, according to a scheme held out to the public, whether he who pays the money is to have anything for it, and, if so, how much, that is a lottery. You will see, therefore, that the elements of this definition are two: First, that the party who pays the pecuniary consideration must have a return,— a prize; second, that that return or prize is determinable by lot or chance.

"Now, every enterprise in which we engage has a return or prize, or is supposed to have. That is the incentive which makes men industrious and active. Whether that return or prize be determinable by mere lot or chance makes it * * * a legitimate enterprise, or a lottery, and therefore an unlawful enterprise. We perhaps can illustrate that best by referring to some of the schemes of life in which men are engaged. Take, for instance, the life insurance companies,—those that proceed either on the stock plan or on the assessment plan. They require of the member that he pay in a certain amount of money. That is the pecuniary consideration. That money is invested, or supposed to be invested, in securities, and, when the member dies, a certain amount, stipulated in the policy, is paid to his heirs or the beneficiary named in the policy. That is the return. The man may have been insured but a month, and have paid in but a few dollars, and have received back $5,000 or $10,000. In such instances as that, a much larger sum has been returned than the consideration, but the fact that there was such a return does not make it an unlawful enterprise. Why? Because the prize is not determinable by, or dependent upon, chance or lot. It is dependent upon the life of a man, and the life of a man is determined by the laws of nature, and not by the chances of lot.

"A man who makes an investment in real estate may put in a few thousand dollars, and take out a million. What he puts in is the consideration; what he takes out is the prize. It may be a hundredfold larger than what he puts in, but on what is it dependent? Upon the growth of the town in which he lives; upon the growth of public sentiment respecting the value of property in that particular locality; upon the law of growth, which is itself a natural one,—an industrial law. But suppose a man puts a ticket in a hat with a hundred other tickets, and then it is drawn by a blindfolded man, his chance of the prize offered is dependent upon that drawing. The ticket may cost but 50 cents. The prize may be worth $10,—much larger than the price of the ticket, though not larger in proportion than the life insurance policy or the real estate investment. But the getting of the prize is dependent upon the chance or lot of his ticket being drawn, not upon any natural law, as a man's life, nor upon any industrial growth, as the growth of the value of real estate. This illustrates to you the difference between legitimate investments, which may yield, according to the good fortune of the investor, a hundredfold more than the amount invested, and a gambling investment, according to a lottery, which can only yield in case the allotment or chance, which is purely artificial, turns in his favor."

It would seem that the distinction between the risk or chance involved in a business venture and the lot or chance which enters into the determination of the awarding of a prize in a lottery, gift enterprise, or similar scheme within the meaning of the statute, as pointed out by Judge Grosscup in his instructions above quoted, may properly be said to exist between the risk or chance involved in a wager upon the outcome of a horse race, a baseball game or an election and the lot or chance which enters into the awarding of a prize in a lottery, gift enterprise, or similar scheme. In the former natural forces are determinative, while in the latter artificial forces are determinative, at least in part. So it was that planned artificial forces thwarted

skill and caused the machine to be condemned as similar to a lottery under the laws of Massachusetts in Commonwealth v. Plissner, 295 Mass. 457, 4 N.E.2d 241; the chance drawing of cards determined the outcome of the game "keno" and caused it to be condemned as a lottery under the federal statute in Boasberg v. United States, 5 Cir., 60 F.2d 185; the business promoting offer of a right to "pull" a chance of an advantageous purchase condemned as a lottery in Wolf v. Federal Trade Commission, 7 Cir., 135 F.2d 564; the numbers game wherein the players merely guess that the result of mathematical calculations based on prices paid at a certain race track would be a certain prize-winning number held to be a lottery and not a direct bet on a horse race in Forte v. United States, 65 App.D.C. 355, 83 F.2d 612, 105 A.L.R. 300; the promotion sale of foreign bonds through a chance of enhanced return dependent upon lot or chance determined by drawings held to be a lottery scheme in Horner v. United States, 147 U.S. 449, 13 S.Ct. 409, 37 L.Ed. 237 and in United States v. Zeisler, C.C.N.D. Ill., 30 F. 499; the investment scheme carrying with it a chance of obtaining a low number entitling applicant to a loan on attractive terms held to be a lottery in United States v. Purvis, D.C., 195 F. 618; the scheme for increasing subscriptions to a paper whereby all paid-up subscribers received numbered tickets corresponding to numbered coupons which were to be drawn from a box by a blindfolded person, with prizes to be given to holders of certain tickets held to be a lottery notwithstanding that every purchaser of a ticket is repaid his cost by receiving the paper in United States v. Wallis, D.C., 58 F. 542; are illustrative of schemes which involved artificial forces affecting the awarding of prizes held to be lotteries by the courts. The awarding of the prizes was by "lot" or by "chance", used in a sense closely related to the meaning of "lot" rather than by "chance" as that term is involved in a wager on the uncertain outcome of games of skill, or of a horse race, or of an elec-

tion, wherein natural forces are determinative.

█ In discussing the meaning of the word "chance" as used in the lottery statute, after citing authorities, the court, in its opinion in the equity suit of Eastman v. Armstrong-Byrd Music Co., 10 Cir., 212 F. 662 at page 667, 52 L.R.A.,N.S., 108, said: "It thus appears that it is not every conceivable chance which makes a transaction illegal, and that the word 'chance,' as used in the statute, must be construed in connection with the word 'lot' and with the words 'lottery, gift enterprise, or similar scheme.' The maxim 'noscitur a sociis' applies, and the meaning of the word 'chance' is to be known or explained by its associates." It would seem plain that the word "chance", as used in the statute in its association with the word "lot" and the other words in the statute applicable to a "lottery" must be construed as colored, if not controlled, by the meaning of its associated words.

It is the argument of the Government that the chances that an individual has of winning when he bets with a bookmaker are, in a majority of cases, so small and so slightly controlled by forces that can be evaluated by judgment or experience that the receipt received by the bettor for his stake is nothing more than a ticket entitling him to draw for the prize in a lottery being conducted by the bookmaker. The Government further says that the aforesaid argument is sustained by the "nationwide" scope and reach of defendants' bookmaking schemes, as shown by their advertisements, tempting the poor and the ignorant, by offering long odds, to play their wages and savings in hopes of large winnings, with attendant evils such as the lottery statute was intended to curb.

It is the Government's further position that the chances of winning are so small in many, if not most, instances that the selection of a horse to win, place or show becomes nothing more than a guess. This argument is buttressed by reference to the count of the indictment based on the alleged offer of a list of 113 horses upon which bets were invited to be placed upon a selected horse to win, place or show in the Kentucky Derby which was to be run some weeks in the future. In such case both the bookmaker and the better knew that comparatively few of the horses in the list would run in the race. The terms of the bet was to select a winner and if the horse bet upon did not run the bettor would lose and the bookmaker would win. Thus the bookmaker was able to place odds on some horses as great as 500 to 1. The Government says that was nothing more than a guessing scheme and within the meaning of the lottery statute.

Guessing contests have generally been held to be lotteries within the meaning of the statute here in question. In Waite v. Press Publishing Association, 6 Cir., 155 F. 58, 11 L.R.A.,N.S., 609, 12 Ann.Cas. 319, a promotion scheme wherein prizes were awarded to new subscribers to a newspaper whose guesses were closest to the total number of votes cast in the United States in a presidential election was held to be a lottery. In People ex rel. Ellison v. Lavin, 179 N.Y. 164, 71 N.E. 753, 66 L.R.A. 601, 1 Ann.Cas. 165, a scheme for distributing prizes to the purchasers of cigars who estimated most closely the number of cigars of all brands upon which the Government would collect taxes in a given month was held to be a lottery. In Hudelson v. State, 94 Ind. 426, 48 Am. Rep. 171, the award of prizes to the individuals guessing most closely the correct number of beans in a glass globe was held to be a lottery.

As will be noted, the foregoing cases, held to be lotteries, were strictly guessing contests. I know of no case in which it has been held that bets upon the outcome of an election in which the bettor may exercise judgment formed by his knowledge, or supposed knowledge, of the candidates, the issues, the trend of public opinion and other factors that influence the outcome of an election has been termed a mere guess. The same applies to bets on horse races or upon games of skill.

It would seem that in the bets invited by defendants in their bookmaking schemes there is always present something more than a mere guess and there is nothing

which resembles the distribution of prizes by lot. The odds may often be long and the chance of winning small so as to tempt the ignorant and the greedy to risk amounts small or large on the chance of getting a much larger return, and yet in every case there is a race or a game of skill or an election or something in which natural forces are involved and upon which knowledge, skill and judgment are brought in to play. Even in the cases where the bets are placed upon the winner of races to be run in the future before it is known what horses will take part in the race there is the opportunity to find out about the horses, the stables from which they come, the owners, and whether or not they may be expected to put a specified horse in the race, if natural forces do not prevent, all of which furnishes a basis for the exercise of knowledge, skill and judgment and in none of which do we find, even in part, the operation of artificial forces which characterize schemes based upon "lot or chance", as used in the lottery statute.

■ Undoubtedly the bookmaking schemes of defendants are evil in their influence and pernicious in their results. Undoubtedly they are much more evil and much more pernicious than many of the schemes which have been held to be lotteries within the meaning of the statute. Nevertheless, as I construe the term "lottery, gift enterprise, or similar scheme", as used in the statute, and as I understand defendants' schemes, as set forth in the indictments, defendants' schemes are not lotteries or similar schemes and are not reached by the statute. As said by Judge Sibley in Boasberg v. United States, supra, "* * * the use of the mails has not been denied to every form of gambling * * *." [60 F.2d 186] The statute has not, in my judgment, denied the use of the mails to defendants' schemes as they are made to appear in the indictments. To hold otherwise would be to read into the statute a meaning that is not therein expressed and that would be judicial legislation. The evils the indictments seek to strike here must be reached through broadened legislation by Congress.

Under the facts disclosed on the face of the indictments neither can be sustained as a violation of the terms of the lottery statute, and the motion to dismiss the indictment is allowed in each case.