COMMONWEALTH *vs.* THEATRE ADVERTISING CO. INC.

SAME *vs.* GEORGE GILL.

Suffolk.   March 5, 1934. — May 25, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & LUMMUS, JJ.

*Gaming. Nuisance. Practice, Criminal,* Requests, rulings and instructions, Charge to jury. *Words,* "Gaming."

At the trial of a complaint under G. L. (Ter. Ed.) c. 139, § 14, for keeping premises resorted to for illegal gaming, the evidence, substantially undisputed, showed that the defendant kept premises on which the game of "Beano" was played; that the winners of the game became entitled to articles of value; and that in the game the element of chance was inherent and predominated, and the element of skill was infinitely small, if present at all. The trial judge denied a motion by the defendant that a verdict of not guilty be ordered; and instructed the jury that " 'To play at any game of chance or skill, on the issue of which money, or property having any value, depends, is illegal gaming,'" that "Nobody has ever contended that legitimate athletic contests, or games of any kind in which contestants take part, even though there are prizes offered, is illegal," that "be it a game of chance or be it a game of skill, you have got to determine this question, Is the final result that . . . [the player] gets after playing that game,

money or property having any value?" and that "If you find that the money that he obtains or the prize that he obtains is induced in any way by the playing of that game, either by chance or by skill, then you can come to the conclusion that that constitutes illegal gaming under our law." *Held*, that

(1) The defendant's motion properly was denied;

(2) In the circumstances, there was no error in a refusal by the judge to give in terms rulings, requested by the defendant, that the "fact that chance enters into the determination of the winner is not sufficient to establish a game of chance," that the burden was on the Commonwealth to prove that "the element of chance was the dominating factor in determining the winner in the game of 'Beano,'" and that if the "element of skill is the dominant factor in determining the winner in the game of 'Beano,' then 'Beano' is a game of skill and the jury should return a verdict of not guilty";

(3) There being no evidence that "Beano" was a game of skill, there was no error in the instructions to the jury, as applied to the substantially uncontradicted evidence;

(4) It was proper to refuse, as inapplicable to the facts which might be found on the evidence, requests by the defendant for rulings that "gaming as an illegal act differs from the playing of games, and is synonymous with gambling," that "gambling as an illegal act means that staking of money or property of value upon an outcome determined by chance," and that "the essentials of gaming as an illegal act are, a stake and a hazard or chance."

Two COMPLAINTS, received and sworn to in the Municipal Court of the City of Boston on September 15, 1933, described in the opinion.

Upon appeal to the Superior Court, the complaints were tried together before *Beaudreau*, J. Material evidence is stated in the opinion. There was a verdict of guilty upon each complaint. The defendants alleged exceptions and presented a consolidated bill of exceptions.

*T. H. Mahony*, for the defendants.

*D. J. Gillen*, Assistant District Attorney, for the Commonwealth.

PIERCE, J. These are two complaints charging the defendants with keeping and maintaining a gaming nuisance in the city of Boston, i.e., premises "resorted to for illegal gaming." The complaints were tried to a jury and resulted in verdicts of guilty as to both defendants. Upon motions the complaints were consolidated for the purpose of filing and presenting the exceptions of the defendants to the Supreme Judicial Court.

There was evidence that the defendants conducted in Keith's old theatre on Washington Street, in Boston, a game, known as "Beano," in the following manner. Along one side of the lobby of the theatre there was a long counter outside of which chairs were placed. On the inner side of the counter was a row of shelves upon which various articles of merchandise were displayed. In front of these shelves slightly below the level of the counter and five feet from the chairs, was a series of square targets, one opposite each chair. Each target was about fourteen inches square, divided into one hundred squares of approximately one square inch. These squares were numbered one through ninety-nine, one square being blank. As many players as desired could sit on the chairs and upon the payment of ten cents each would receive one score card and one ticket or for fifteen cents two score cards and two tickets. The player also received four pointed, feathered darts and a number of beans. On the side of the targets were the separate letters of the word "Beano," repeated twice. The numbers one to nineteen on each target appeared in two rows of nine and ten numbers respectively opposite each letter B. The numbers twenty to thirty-nine in two rows of ten numbers each appeared opposite the letter E, the numbers forty to fifty-nine so appeared opposite the letter A, the numbers sixty to seventy-nine opposite the letter N, and the numbers eighty to ninety-nine opposite the letter O. On each score card appeared five horizontal rows and five vertical rows of numbers. These cards stated the rules of the game. The center space on the score card was blank and the vertical columns of figures were "topped" by the letters B, E, A, N, O. The numbers on the score card were arranged in relation to the letters of the word "Beano" corresponding to their arrangement on the targets. The score cards of the various players had varied arrangements of numbers. The announcer, at the beginning of the game, said that by buying (or playing) two cards for fifteen cents, a player has twenty-four ways of making "Beano," and instructed the players to throw their darts at the target opposite their chairs and to cover with beans on their score

cards any numbers thereon corresponding with numbers pierced by their darts on their targets; after the darts were thrown the announcer asked if any player had made "five in a row," or "Beano," i.e., four beans in a row, which, with the blank space in the middle of the card (which each player was instructed to cover with a bean before starting), would make five beans in a row. If any player so announced "Beano" he was declared the winner and was given a coupon entitling the winner to one of the various articles of merchandise upon the shelves of the value of $1.50, or a certificate of purchase or paid order, upon one of various department stores in the vicinity, to the value of $1.50 which could be redeemed by the purchase of merchandise at such store.

There was further testimony to the effect that if nobody declared "Beano" by individually so scoring "four hits in a row," the announcer began to call from the targets of the other players the numbers pierced by such other players on their individual targets, and instructed all players on whose score cards such numbers appeared to cover the same with beans and, upon any player getting "five in a row" in this way, to declare "Beano." Such player was declared the winner and received the coupon in the same way as above stated. It is possible to make "Beano" upon the hits of the other players.

A witness called by the defendants, who was the assistant manager of the defendant corporation and who was the announcer, testified that from six to fifteen winners per day won "Beano" by themselves piercing four numbers on their own targets which appeared in a row on their score cards; that about twenty-five per cent of the winners so pierced three such numbers; that fifty to sixty per cent so pierced two such numbers; and that seventy-five to ninety per cent so pierced one number, and that seldom, if ever, did a person win "Beano" without so piercing one number.

At the close of the testimony the defendants duly filed written motions for directed verdicts of "not guilty." These motions were denied subject to the exceptions of the defendants. The defendants, in writing, thereupon

requested the judge to instruct the jury as follows: "1. The fact that chance enters into the determination of the winner is not sufficient to establish a game of chance. 2. The burden is upon the Commonwealth to prove that the element of chance was the dominating factor in determining the winner in the game of 'Beano.' 3. If the element of skill is the dominant factor in determin[in]g the winner in the game of 'Beano,' then 'Beano' is a game of skill and the jury should return a verdict of not guilty." The judge refused so to instruct the jury and the defendants duly excepted.

The judge charged the jury in part as follows: "Now, what is illegal gaming? Our Supreme Court as far back as 1860 has decided in the case of *Commonwealth* v. *Gourdier*, . . . [14 Gray, 391] what illegal gaming is, and in that case the court said: 'To play at any game of chance or skill, on the issue of which money, or property having any value, depends, is illegal gaming.' . . . It may or may not help you to determine whether or not the game is a game of skill or chance. That is not the determining factor. The question for you men to decide is whether or not any money or property having any value depends upon the outcome of this game whether it be of skill or of chance. That is the question that you must determine. . . . But the issue, after all, on the evidence is, as I said before, be it a game of chance or be it a game of skill, you have got to determine this question, Is the final result that that man gets after playing that game, money or property having any value? Does it depend upon his skill, or does it depend upon his chance? If you find that the money that he obtains or the prize that he obtains is induced in any way by the playing of that game, either by chance or by skill, then you can come to the conclusion that that constitutes illegal gaming under our law." The defendants excepted to the foregoing parts of the charge and then made the following request: "I am requesting you now to instruct the jury that gaming as an illegal act differs from the playing of games, and is synonymous with gambling. That gambling as an illegal act means that

staking of money or property of value upon an outcome determined by chance, and that the essentials of gaming as an illegal act are, a stake and a hazard or chance." This request was refused and the defendants excepted. All the exceptions relate to the same fundamental issues, to wit, what constitutes gaming under our law and does the playing of "Beano" fall within the definition?

The motions for directed verdicts for the defendants were denied rightly. The evidence for the Commonwealth was undisputed in large part, and was qualified by testimony for the defendants only in respect to the percentage of times a player had won "Beano" by piercing on his own target four numbers, three numbers, two numbers or one number appearing in a row upon his own score card, and how often "Beano" was won by the player covering some numbers on his card which had been pierced by other players upon their own targets. Putting to one side the right of the jury to believe or disbelieve witnesses for the Commonwealth or the defendants, it is plain that the player who, through his skill, pierces one or more of his own numbers has a better chance of winning than the players who are less successful in piercing their own numbers. On the evidence the order in which the announcer calls off the numbers pierced by the darts of various players is pure chance. He may call at pleasure from any target of any player. Further, it is pure chance that the numbers of player A should be pierced by darts of other players rather than that the numbers of player B should be so pierced and announced. Since the majority of the games could have been found by the jury to be decided by this method, and it could have been found that it is entirely possible that a player who has pierced only one, or even none, of his own numbers may be the winner of the game in spite of the fact that other players have pierced two or three of their own numbers, the jury could find that the element of chance dominates, and that the element of skill is infinitely small if it is to be considered at all. In "Beano" skill may be thwarted by chance except in the rare instances when a player pierces a certain four num-

bers with his four darts. It is not a game where chance is merely incidental. The rules of the game contemplated the element of chance and chance is inherent in the nature of the game. *Murphy* v. *Rogers*, 151 Mass. 118. *Hudelson* v. *State*, 94 Ind. 426. *People* v. *Lavin*, 179 N. Y. 164.

We pass to the consideration of the defendants' exceptions to the refusal of the trial judge to give the requests, to the exceptions to the charge, and to the refusal to instruct the jury at the close of the charge.

After reading from *Commonwealth* v. *Gourdier*, 14 Gray, 390, 391, that "To play at any game of chance or skill, on the issue of which money, or property having any value, depends, is illegal gaming," the trial judge immediately qualified this instruction by saying: "Nobody has ever contended that legitimate athletic contests, or games of any kind in which contestants take part, even though there are prizes offered, is illegal." See St. 1931, c. 331; now G. L. (Ter. Ed.) c. 271, § 22A. In a word "gaming" is used synonymously with the word "gambling" in our decisions and statutes. *Commonwealth* v. *Taylor*, 14 Gray, 26, 29. G. L. (Ter. Ed.) c. 139, §§ 14, 15. G. L. (Ter. Ed.) c. 137. The word "game" is very comprehensive, and embraces any contrivance or institution which has for its object the furnishing of sport, recreation or amusement. "Gaming for money or other property" is illegal. *White* v. *Buss*, 3 Cush. 448, 451. There was no error in the refusal of the judge to give in terms requests numbered 1, 2 and 3. The judge instructed the jury that "Nobody has ever contended that legitimate athletic contests, or games of any kind in which contestants take part, even though there are prizes offered, is illegal"; and said "be it a game of chance or be it a game of skill, you have got to determine this question, Is the final result that that man gets after playing that game, money or property having any value? Does it depend upon his skill, or does it depend upon his chance? If you find that the money that he obtains or the prize that he obtains is induced in any way by the playing of that game, either by chance or by skill, then you can come to the

conclusion that that constitutes illegal gaming under our law." This quoted instruction applied to the uncontradicted facts was without error, because there was no evidence that it was a game of skill. The requests of the defendants that the jury should be instructed "that gaming as an illegal act differs from the playing of games, and is synonymous with gambling" and "That gambling as an illegal act means that staking of money or property of value upon an outcome determined by chance, and that the essentials of gaming as an illegal act are, a stake and a hazard or chance" were refused rightly, because inapplicable to the facts proved by the evidence. On all the evidence as the case was tried and on the testimony of the officers of the defendant corporation it is plain that "Beano," as it was played at the time covered by the complaints, was a "game of chance or skill, on the issue of which money, or property . . . depends" and that the element of chance predominated.

*Exceptions overruled.*