COMMONWEALTH *vs.* HARRY PLISSNER.

SAME *vs.* SAME.

Hampden.    September 16, 1936. — October 27, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Lottery. Evidence,* Experiments. *Words,* "Lottery."

At the trial of complaints charging violation of §§ 5 and 7 of G. L. (Ter. Ed.) c. 271, it appeared that the defendant maintained on premises used by him a "digger" slot machine, so called, and, to prove the character of the operation of the machine, the trial judge, after hearing evidence in the absence of the jury to the effect that the mechanism and contents of the machine were in substantially the same condition as when operated on the defendant's premises, in his discretion properly permitted the machine to be operated in the jury's presence, and also properly admitted in evidence testimony as to its operation in a district court at a previous trial in substantially the same circumstances.

A finding of a violation of §§ 5 and 7 of G. L. (Ter. Ed.) c. 271, in the maintenance and operation of a "digger" slot machine, so called, in which one deposited money in order to try for prizes contained therein, was warranted on evidence that, although the player could exercise a certain amount of skill in making preliminary arrangements of the mechanism, his control over the result of the operation ceased at a certain point and the result depended upon chance.

COMPLAINTS, received and sworn to in the District Court of Springfield on September 3 and 18, 1935, respectively.

On appeal to the Superior Court, the complaints were tried before *Fosdick,* J.   There were verdicts of guilty.   The defendant alleged exceptions.

The cases were submitted on briefs.

*I. Gelin,* for the defendant.

*T. F. Moriarty,* District Attorney, *& J. F. Kelly,* Assistant District Attorney, for the Commonwealth.

PIERCE, J.   The defendant was found guilty by a jury in the Superior Court on two complaints under G. L. (Ter. Ed.) c. 271, one charging that he "was concerned in setting up and managing a certain lottery for money and merchandise" (§ 7), and the other charging that he "did commonly keep and suffer to be kept in a building and place actually used and occupied by him" "certain apparatus, to wit, a slot machine for the purpose of playing at an unlawful game or sport for money or other thing of value" (§ 5). Sentence was imposed, but execution thereof has been suspended. Upon motion, the complaints were consolidated for the purpose of filing and presenting the defendant's exceptions to this court.

A description of the machine involved in the cases as presented in the record is as follows: "The machine works primarily on the same principle as travelling excavating cranes are employed in commercial and industrial use. Upon a supporting platform a ground is made of hard candy about the size of small pebbles, loosely spread. Positioned upon this support are placed various objects of merchandise consisting generally of clocks, knives, cigarette lighters, cameras, flashlights, compacts, and other specialty items. These articles are positioned and displayed in what is known as the operating field. To the rear of the display case, there is a boom from which is suspended a grasping device. When the machine is not in play, the boom is in a vertical or nearly vertical position. The grasping device has three prongs, which when extended has [*sic*] a spread of approximately three and five eighths inches. The machine is constructed mechanically so that the grasping device can be dropped to practically any point within the operating field. Its aim from right to left and from left to right is controlled by a regulator wheel on the face of the machine. This regulator wheel as it is turned, correspondingly and accurately change[s] the aim of the boom. The point from front to rear at which the grasping device will light, is shown on an indicator on the rear of the machine, which indicator is plainly marked at its extreme front and rear respectively, and which by lines across the indicator, indicates changes

of an inch or any fraction thereof. The articles themselves, the actual shift in the aim of the boom from right to left, and the resting place of the grasping device from front to rear as disclosed by the indicator, are all observable to a customer before the machine is placed in operation. After the customer has selected a desired object and has, by means of the regulator wheel gauged the spot at which the grasping device is to rest, he then inserts a coin in the machine, which sets it in operation. After the machine is in operation, the boom drops from a vertical to a more horizontal position (extent to which it reaches a horizontal position being dependent upon whether the operator has regulated for a forward or backward drop), the grasping device drops, the prongs close on the object desired and if the customer's efforts have been successful, the article is grappled, raised, dropped in a delivery chute and is delivered automatically to the customer."

A summary of all the testimony material to the issues raised is set forth in the record. There was evidence that on August 30, 1935, three Springfield police officers, acting under orders of Captain Blodgett, visited three places to make an examination of so called "digger" machines. One officer, Murphy, testified that he played each of three machines several times, and that his companions did likewise. As to the grasping device on the machines the same officer testified: "On those occasions I attempted to manipulate the machine so that it would pick up a particular object other than the candy. I tried so it would get over and clamp on it. It would either pull one side or the other or if it gripped it it would not hold it, except that there . . . [indicating an article which he had secured]. I did not try to get that. It just caught it. I tried to fix it on some other article. I think it was the clock I was after. This pronged instrument with my directing of it would fix on the clock several times but it would slip or let go of it. In other words, it did not hold it and return it into opening and into the slot there. . . . Merely by the operation of the wheel you fix the general direction in which the derrick when the machine begins to function will go. Then your part is over. When

you do that, that is when you fix the direction of the derrick by turning the wheel, the derrick remains in the same general position it is in now. It starts the machine working and it lifts up and comes down here. With that operation you have nothing to do . . . When I was going for that particular article the finger instrument would crawl near it or over it, slip off and pick up three or four pieces of that candy, go back up again and drop it in, and I dropped in another nickel and tried it over again. The grasping device dropped down over it or near it sometimes, it did not go over it, went to one side of it, tipped it over sometimes, and sometimes it would grasp it. It would not drop it. I[t] would just grasp it and keep on going up and leave it as it was; sometimes it moved it a little ways one way or another but would not raise it. On other occasions as the grasping device would drop, it would deflect away from the articles toward which I directed it to one side and then it would pick up three or four pieces of candy." The police officer testified more particularly, in substance, that at the first place where a machine was located he played the machine seven times, inserting nickels in the slot, and got nothing; that at the second place he played the machine six times and got a small toy elephant; that at the third place he played seven times and got nothing; that on each occasion, while the officers were operating the machine, he saw others, not officers, playing the machine and "they did not seem to have any luck"; and that each time they played they appeared to attempt to direct the grasping device toward some particular object in the case. Another officer, one Chapman, testified in substance that he played the machine nine times at the first place and got nothing; that he played the machine at the second place eleven times and got two articles; and that at the third place he played nine times and got one article. On cross-examination he testified, in substance, that he decided before he played the machine which article he wanted to get; that he read the directions carefully and followed the directions shown on the indicator and on other parts of the machine; that he played for the article he wanted to get; and that in every case he got what he aimed

for. Other officers, including Captain Blodgett, testified as to their experience and the result which attended their operation of the machine.

One of the defendant's machines, seized at a bus terminal, was brought into court at the trial so that it could be operated before the jury. The defendant objected to such demonstration on the ground that the mechanism had been damaged in transit from the bus terminal to the court room. The trial judge sent out the jury and heard evidence on this preliminary question. Captain Blodgett testified that the machine had been carefully moved in an upright position by professional truckmen. He also arranged the articles to be picked up in such positions as, he testified, substantially represented their positions when the machine was at the bus terminal. Thereupon the trial judge, over the exceptions of the defendant, allowed the machine to be played before the jury. The defendant also excepted to the admission of evidence of the results of experiments conducted in the District Court, on the ground that at that time the articles in the machine were not in the same positions as they were when it was at the bus terminal.

The testimony favorable to the defendant was to the effect that successful operation of the machine depended on the skill of the operator, that the machine used for the experiments was not in proper working order at the time of the trial, and that the witnesses in their unsuccessful operation of the machines did not follow the directions set out on the top of the machine.

At the close of the testimony the defendant presented written motions for verdicts of not guilty, together with a number of requests for instructions. The motions for directed verdicts were denied. As to the requests, some were given and some refused. Since the defendant has not argued the question of the correctness of the action of the trial judge upon the separate requests, it is unnecessary to set them forth separately or so to consider them. The defendant also excepted to portions of the charge of the trial judge.

The questions argued by the parties are (1) whether

there was prejudicial error in the action of the trial judge in permitting the use of the machine for experimental or demonstrative purposes at the time of the trial, and in admitting evidence of the result of similar tests in the District Court; (2) whether the defendant's motions for directed verdicts were improperly denied; and (3) whether the trial judge erroneously instructed the jury with reference to the elements constituting a lottery.

As to the first point the defendant argues that the experiments before the jury should not have been allowed because the machine was not in the same state of mechanical perfection as it was when in operation at the bus terminal. In general, the admission or exclusion of evidence of this type lies in the discretion of the trial judge and his ruling thereon will not be reversed unless plainly wrong. *Thornhill* v. *Carpenter-Morton Co.* 220 Mass. 593, 599. *Posell* v. *Herscovitz*, 237 Mass. 513, 517. It does not appear in the cases at bar that discretion was not properly exercised. The trial judge heard the parties in the absence of the jury. There was evidence that the machine had been moved carefully by experienced men, and that it had remained in an erect position while being moved. There was also evidence from which it could have been found that the machines, when played by the police officers in the various establishments where they were kept, operated in a manner similar to that of the machine which was used for the experiments. It could not be said therefore that the trial judge was plainly in error in allowing experiments before the jury.

The defendant also argues that evidence as to the results of experiments in the District Court should not have been admitted because the articles were not in the same positions at the time when the machines were played in public places as they were at the time of the experiments in the District Court. Assuming the validity of an objection to the competency of the evidence on that ground, still, no error was committed inasmuch as it could have been found from the evidence that the articles were in substantially the same position, with the possible exception of three of them. The

machine, moreover, was sent to the jury room without objection by the defendant. The jury were told to operate the machine, and to place the articles in any position they chose. Therefore no prejudice resulted to the defendant from that ruling of the trial judge.

The defendant's remaining exceptions relate to the denials of his motions for directed verdicts, and to the charge of the trial judge with reference to the elements of a lottery. The defendant contends that his motive in maintaining the machines was the establishing of a market for the articles which were in the machines, and which he manufactured. He contends also that the successful operation of the machines depended on skill rather than chance, and that the machines did not appeal to the gambling instincts of the public but that their appeal lay in the attraction to try one's skill.

Generally speaking, the word "lottery" signifies a scheme for the distribution of prizes by chance. *Commonwealth* v. *Mackay*, 177 Mass. 345, 346. The elements of a lottery are the payment of a price for the chance of a prize, the result depending on or being determined by chance. *Commonwealth* v. *Sullivan*, 146 Mass. 142, 144. *Commonwealth* v. *McClintock*, 257 Mass. 431, 434. *Commonwealth* v. *Wall, ante*, 70, 72. If a scheme is a lottery, the mere fact that the dominant purpose of its sponsor is to increase his business does not save it. *People* v. *Lavin*, 179 N. Y. 164, 167, 168. One of the evils aimed at, as has been stated with reference to a similar statute, is the offering of "bargains which appeal to the gambling instinct, and induce people to buy what they do not want by the promise of a gift or prize the precise nature of which is not known at the moment of making the purchase." *Commonwealth* v. *Emerson*, 165 Mass. 146, 148.

The simplest form of lottery is, perhaps, a game depending wholly on chance in which the skill of the player is not a factor, such as games popularly known as raffles and punch boards. See *Commonwealth* v. *Wright*, 137 Mass. 250, 251; *Matter of Gray*, 23 Ariz. 461, 462, 467. The mere fact that skill as well as chance may enter into a game,

however, does not prevent it from being a lottery. Compare *Commonwealth* v. *Theatre Advertising Co. Inc.* 286 Mass. 405, 410; *Stevens* v. *Cincinnati Times-Star Co.* 72 Ohio St. 112, 147. With reference to cases where both elements are present, the rule generally stated is that if the element of chance rather than that of skill predominates, the game may be found to be a lottery. See *Commonwealth* v. *Theatre Advertising Co. Inc.* 286 Mass. 405, 410; *People* v. *Lavin,* 179 N. Y. 164, 170, 171; *Stevens* v. *Cincinnati Times-Star Co.* 72 Ohio St. 112, 148; *Multnomah County Fair Association* v. *Langley,* 140 Ore. 172, 180.

In the cases at bar there was evidence from which the jury could have found that after a certain point in the operation of the machine, the player could no longer exercise any skill or even control over the mechanism, and that whether the grasping device secured and carried up any desired object depended on chance. It would seem, therefore, that the operation of the machine, under the above stated rule, could have been found to be a lottery even though an element of skill was present. If the machine did constitute a lottery it could have been found, and indeed it is not controverted, that the defendant was also guilty on the complaint charging him with keeping the machine in a place actually used and occupied by him. Compare *Commonwealth* v. *Ward,* 281 Mass. 119, 122. It follows, therefore, that there was no error in the denial of his motions for directed verdicts.

The defendant also argues that the following parts of the charge of the trial judge were erroneous: "But the mere fact that winning a prize in a game may require some skill, or even a very high degree of skill, and that skill is a very great factor in it, does not make a game any the less a lottery if it has other features necessary to make it a lottery. In other words, the presence or absence of the required skill to win a prize in a game has nothing vitally to do with whether or not the game is a lottery. Again in other words, no matter how much and how great skill is required the game is still a lottery if it has the other required features of a lottery. That means that it is not necessary

that a game should be a lottery because chance should predominate or that skill should predominate.  As you will hear me say later, if there is chance as an effective and active cause in the game, even though skill we will say might be ninety percent and chance the rest the game is still a lottery. . . . Assume . . . that by nature or by experience, or by both, a player should come to have and be able to exercise the very greatest degree of skill which the construction of that machine permits to be used, and that he actually exercises that skill to the extreme limit required in order to win, required possible in order to win . . . then ask yourselves this question . . . does there still remain before the player can succeed, First.  Any opportunity for the taking effect of one or more forces over which by reason of the construction of the machine the player can have no possible control? . . . Second.  A sure and certain possibility that such uncontrollable forces will take effect at each and every operation of the machine by reason of the nature and construction of the mechanism? . . . Third.  A certainty that if those uncontrollable forces do take effect the player will be unable to win his prize? . . . If a gambling chance as I have defined it to you now, as you may find exists in this case is an element of the playing of the game, and if the fact that it is such an element is found by the jury to be an active and effective cause of arousing a desire in the public to pay its money for the privilege of trying to win a prize by playing that game, then the game is a lottery within the meaning of the statute as I read it to you, and setting up and promoting such a game is an offence. . . . I spoke of the gambling chance and its being found to be an active and effective cause of a public desire to pay its money to play the game for a prize.  The gambling chance need not be the only and sole active and effective cause of such desire, other innocent things may contribute to the creation of such a desire, a wish to test one's skill, the attractive appearance of the machine, the value and attractive appearance of the prizes, the never quite outgrown desire to see the wheels go around, those and other innocent reasons may enter into the creation of a desire

to play the game, but if the gambling chance that I have mentioned also entered into the creation of a public desire to play as an active and effective cause of that desire among others, no matter how many or what may be the innocent causes, then the game is a lottery."

The defendant argues that the test submitted to the jury was not in accordance with the test discussed above. But the test as to whether chance predominates over skill is not the only test of whether a game is a lottery. Thus the alternative test is also stated in the cases that if the element of chance is present in such a manner as to thwart the exercise of skill or judgment in a game, then there may be a lottery. *Commonwealth* v. *Theatre Advertising Co. Inc.* 286 Mass. 405, 410. *State* v. *Gupton,* 8 Ired. 271, 273, 274, relied on in *People* v. *Lavin,* 179 N. Y. 164, 170. *Multnomah County Fair Association* v. *Langley,* 140 Ore. 172, 180. This test is in harmony with the rule that a result is determined by chance where it is determined "by means making the result independent of the will of the manager of the game." *Commonwealth* v. *Sullivan,* 146 Mass. 142, 144, 145. The charge of the trial judge went no farther than to present that test to the jury. There was evidence from which it could have been found that after a certain point in the operation of the machine, the control over the machine by the player ceased, and the ultimate result depended on how the grasping device happened to fall. There was no error, therefore, in submitting the last discussed test to the jury, nor in the instruction that the gambling chance need not be the sole cause of the public desire to play the machine. Compare *Commonwealth* v. *Ward,* 281 Mass. 119, 122. It follows that there is no merit in the defendant's exceptions to the charge of the trial judge.

We find no error in the admission of evidence, the denial of the defendant's motions for directed verdicts, the denial of the defendant's requests for instructions, or in the instructions given.

*Exceptions overruled.*