CdOMMONWEALTH *vs.* GEORGE E. LAKE.

Essex.   October 2, 1944. — November 29, 1944.

Present: FIELD, C.J., LUMMUS, QUA, RONAN, & SPALDING, JJ.

*Lottery.   Evidence,* Experiments.

At a trial for promoting a lottery in violation of G. L. (Ter. Ed.) c. 271, § 7, where the substantial issue was whether operating a machine called a "rotary merchandiser" was predominantly a game of skill or one of chance, a witness for the defendant, having been successful during direct examination in obtaining from the machine the prizes which he sought to obtain in a demonstration of it in court, properly might be required during cross-examination to operate the machine under different conditions, which, he objected, were unfavorable to success; the jury were entitled to observe the operation of the machine under all conditions which might exist.

A finding that one in charge of a store at Salisbury Beach called "Sportland" was guilty of promoting a lottery in violation of G. L. (Ter. Ed.) c. 271, § 7, was warranted by evidence that he maintained in the store a certain machine called a "rotary merchandiser" containing assorted prizes which players attempted to obtain by operation of the machine after depositing a coin therein, and that the mechanics of the machine and the game were such that to a great majority of those who actually played the game it was predominantly one of chance.

At a trial for promoting a lottery in violation of G. L. (Ter. Ed.) c. 271, § 7, there was reversible error where the judge, after he had correctly

instructed the jury that they might find the defendant guilty if they should find that the element of chance predominated in a game wherein players, after payments of money, sought to obtain prizes by operating a machine maintained by the defendant in a store, further instructed them in effect that, even though they should find that the element of skill predominated very largely in the game, they nevertheless might find the defendant guilty if they should find that any element of luck, any "gambler's chance," was an inducement to play the game.

COMPLAINT, received and sworn to in the Second District Court of Essex on September 4, 1943.

Upon appeal to the Superior Court, the case was tried before *Cabot*, J.

*A. Margolis*, (*C. F. Leary* with him,) for the defendant.

*E. F. Cregg*, Assistant District Attorney, for the Commonwealth.

QUA, J.   The defendant has been found guilty of setting up or promoting a lottery for money or other property of value at Salisbury on September 3, 1943, in violation of G. L. (Ter. Ed.) c. 271, § 7.   He excepts (1) to the admission of certain evidence, (2) to the denial of his motion for a directed verdict in his favor, (3) to the refusal of the judge to give certain requested rulings, and (4) to portions of the charge.

The alleged lottery was carried on by means of machines known as "rotary merchandisers" set up in a store called "Sportland"[1] in charge of the defendant.   This machine is about four feet high and thirty inches square.   The top cover and the upper portions of the four sides are of glass, so that the "playing field" in the upper part of the inside is visible.   In the center of the "playing field" is a hole, about five and one half inches in diameter, around which is "a green felt area."   Surrounding this is "another area of green felt in the nature of a rim about six inches wide and flat."   When the machine is played this rim revolves around the center area "in the manner of a turntable."   Upon the green felt areas are assorted prizes, such as cameras, watches, whistles, tape measures, and other objects.   When a five cent piece is inserted in a slot the rim or "turntable" slowly

---

[1] The store was at Salisbury Beach. — REPORTER.

revolves with the objects upon it, but the operator can stop it at any point by pressing a button on the outside of the machine. When the rim is stopped in this way, a horizontal arm attached at its inner end to an axis at the rear of the machine automatically swings out across the "playing field." From the outer or free end of this arm is suspended a "finger" the bottom of which, about one inch square, is the "pusher." As the arm swings, the "pusher" travels in an arc at a height of about a quarter of an inch over the surface of the rim and the inner area up to and across the hole in the center. The object of the game is "to have the 'pusher' on the horizontal arm push in front of it the desired prize" from the "playing field" into the hole, whence the object is delivered to the player through a chute. The pusher always travels in the same arc.

A police officer testified that he played three of the machines "a couple of times each" and received nothing. Another officer played about forty times and obtained only a steel tape for which he had not been trying. He watched numerous other players, none of whom obtained any prizes. Neither officer had ever before played this type of machine. It appeared that a witness called by the defendant at the previous trial in the District Court had won five cameras in approximately forty plays. The defendant himself testified in the Superior Court that he had noticed that some players were more successful than others. A witness called by the defendant testified that he had been playing this type of machine for over two years; that he had played over two hundred times; and that he had been "rather successful." He then demonstrated upon the machine in court in an effort to win the five cameras that were in it and in forty-two attempts succeeded in obtaining all of them, together with a steel tape for which he was not trying. On cross-examination this witness was permitted to try (unsuccessfully) for small objects when the larger objects were no longer in the machine in spite of his objection that the method of obtaining a small object was "to get a larger one, such as a camera, behind it and help push it out."

1. There was no error in permitting the defendant's wit-

ness to operate the machine before the jury under conditions which he regarded as unfavorable to success. The jury were entitled to observe the operation of the machine under all conditions that might exist. They could make proper allowances for unfavorable conditions. See *Commonwealth* v. *Plissner*, 295 Mass. 457, 462–463.

2. There was no error in the refusal to direct a verdict of not guilty. There are three elements in a lottery, (1) the payment of a price for (2) the possibility of winning a prize, depending upon (3) hazard or chance. *Commonwealth* v. *Wall*, 295 Mass. 70, 72. *Commonwealth* v. *Plissner*, 295 Mass. 457, 463. In this case the five cent piece put into the slot was the price, and the objects which might be obtained from the machine were prizes, but the defendant contends that the game was one of skill, and that the element of chance was lacking.

The infinite number of "games" devised by the ingenuity of man, whether or not played by means of a machine, range all the way from games of pure skill to games wholly determined by chance. Probably there are very few in which chance plays no part at all, and there are many in which skill plays some part, even if a minor one. Where the game contains elements both of chance and of skill, in order to render the laws against lotteries effectual to combat the evils at which they are aimed, it has been found necessary to draw a compromise line between the two elements, with the result that by the weight of authority a game is now considered a lottery if the element of chance predominates and not a lottery if the element of skill predominates. *Commonwealth* v. *Plissner*, 295 Mass. 457, 464. *People* v. *Lavin*, 179 N. Y. 164, 170–171, 172–173. *State* v. *One 5¢ Fifth Inning Base Ball Machine*, 241 Ala. 455. *Question Game Co. Inc.* v. *Ploner*, 273 Ill. App. 187, 192. *State* v. *Hahn*, 105 Mont. 270, 274–275. *State* v. *Globe–Democrat Publishing Co.* 341 Mo. 862, 875. *Stevens* v. *Cincinnati Times-Star Co.* 72 Ohio St. 112, 148, 151. See *Commonwealth* v. *Ward*, 281 Mass. 119; *Commonwealth* v. *Theatre Advertising Co. Inc.* 286 Mass. 405, 409, 411–412; *State* v. *Livingston*, 135 Maine, 323; *State* v. *Gupton*, 8 Ired.

271. Many of the cases are collected in the several opinions in *State* v. *Coats*, 158 Ore. 122. Moreover, in determining which element predominates, where the game is not one of pure skill or of pure chance, some courts have held, we think rightly, that it is permissible in appropriate instances to look beyond the bare mechanics of the game itself and to consider whether as actually played by the people who actually play it chance or skill is the prevailing factor. *State* v. *Globe-Democrat Publishing Co.* 341 Mo. 862, 882. *State* v. *Kilburn*, 111 Mont. 400, 405–406. *People* v. *Lavin*, 179 N. Y. 164, 173. *State* v. *Coats*, 158 Ore. 122, 132. So here, even if it might be possible by long practice to acquire a substantial degree of skill in stopping the revolving rim at a point or points where the swinging arm would work the desired objects toward the hole, the jury might well find that few, if any, of the persons who would play the machine at a place of public resort would be likely to possess any appreciable degree of skill; that to the great majority of players the game would be primarily a game of chance; and that the appeal of the game to the public would be a gambling appeal, with all the evil consequences of a lottery. Whether the game was predominantly one of chance or of skill was a question for the jury.

3. We refrain from discussing the defendant's requests for rulings separately, since our view of the proper instructions in this case will sufficiently appear from what we are about to say in relation to the charge as given by the trial judge.

4. Among other things, the judge charged the jury, in substance, that if they should find beyond a reasonable doubt that the element of chance predominated they need go no farther and should find the defendant guilty; but that even if they should find that the element of skill predominated, the game might nevertheless be a lottery, and they would have to consider the case further; that if the game is greatly concerned with skill, even to the extent of eighty, ninety, ninety-five, or ninety-nine per cent, if there necessarily remained in each unit of play an element of luck, a "gambler's chance," to the extent of one per cent

which was the effective moving element in the desire of people to play, the jury should find the defendant guilty. The latter part of this instruction seems to us to go too far. It goes beyond the generally accepted test whether, looking at the game itself as a whole, the element of chance or the element of skill predominates. It superimposes a second more or less inconsistent test whether the game contains some infinitesimal ingredient of chance which operates as an inducement to play. This second test seems difficult of application and likely to include in the list of lotteries a number of games primarily of skill commonly considered innocent and lawful. We have discovered no authority for it.

This charge may have had its origin in an attempt to adapt to this case a charge which was held not erroneous in *Commonwealth* v. *Plissner*, 295 Mass. 457, 464–466. But a decision that a charge is not harmful error in a particular case may be far from an approval of all that was said in it. The machine in that case worked on the principle of a travelling crane, consisting of a boom from which was suspended a grasping device. There was evidence that however skilfully the operator might place the boom, he could exercise no control over the working of the grasping device, and that whether it caught and held anything depended upon chance. The case could have been found to be one in which "the element of chance . . . [was] present in such a manner as to thwart the exercise of skill or judgment." 295 Mass. at page 466. This was no more than a way of saying that it could be found that in the final result chance, operating later, predominated over the earlier exercise of skill. It was held that the charge went no farther than to present this aspect of the case to the jury. In the case before us we think there was no occasion to leave to the jury more than the simple test whether the game was predominantly a game of chance or predominantly a game of skill, with suitable explanation and illustration, and that the submitting to the jury of a second test with the emphasis upon a minute element of chance was erroneous and may have been prejudicial to the defendant.

*Exceptions sustained.*