OPINION OF THE COURT
David S. Blatt, J.
The defendant newspaper herein sponsored a voting contest late in 1979 to determine which of many entrants would be voted the "King of the Infants” or "Rey Infantil”. The news *876 paper is published in the Spanish language and primarily services the Hispanic community of New York City.
Purchasers of the paper at a newsstand cost of 25 cents receive a coupon in each edition which entitles them to vote for the infant of their preference, and to cast 25 votes for each coupon they obtain from the paper. They may vote as many coupons as they purchase. In addition, individuals may go to the offices of the newspaper on Hudson Street in Manhattan and purchase individual pages of the newspaper containing the coupon at a cost of 17 cents. This admittedly was for the purpose of allowing those who did not want to purchase the newspaper in its entirety and whose motivation was merely to obtain extra ballots to vote for their favorite infant. Oral testimony at the trial indicated that large numbers of people came in to purchase quantities of single pages containing the voting coupon.
It is clear that this was a most successful promotion. Defendant displayed a thick sheaf of invoices indicating those who had come in to purchase quantities of single pages containing the coupon with which to cast large quantities of votes for their favorite entrant.
Claimant came into defendant’s offices on Hudson Street during business hours on December 11, 1979 and paid $1,000 for single newspaper sheets containing voting coupons. She then subsequently proceeded to vote them all for her son. On that same evening the contest closed.
The following day, claimant came back to the offices of the newspaper and demanded her money back. This was refused and she commenced this action to recoup her $1,000.
Subsequently, her son won a runner-up prize of $500, which is allegedly being held by the newspaper.
The complaint alleges a refusal to return the money after cancellation.
The court asked for a memorandum of law on defendant’s position and on the question of public policy. Defendant’s memorandum of law contends that the contest as described herein is not a lottery and therefore not against the public policy of the State of New York. It is described as a "voting contest” with no element of chance, and only a mathematical calculation utilized to determine the winner. Cases are cited primarily from sister States, none of which are on all fours with the matter at hand.
*877 Defendant also contends that the prize herein was to go to a contestant, not to a voter and that therefore it cannot be a lottery. They additionally claim that the infant winners furnish no consideration for the prize and that since one of the elements of a lottery is consideration paid by the winner for a "chance”, that this cannot therefore be a lottery. (Commonwealth v Jenkins, 159 Ky 80.)
The definition of a lottery in New York State is set forth in a number of cases including People v Miller (271 NY 44). It indicates that there are three elements necessary to constitute a lottery:
(1) consideration,
(2) chance, and
(3) a prize.
Defendants basically contend that the two elements of consideration and chance were not present, and that therefore, the "voting contest” herein could not be constituted as a lottery.
It is not always crystal clear as to whether or not the element of chance is present. It has been held in our courts that "a business promotion scheme is not a lottery because of the motive for the scheme.” On the other hand, if prizes are awarded, and chance determines the winner, a business promotion scheme will be held to be a lottery where, regardless of the subtlety of the device employed, it can be shown as a matter of fact that the scheme in actual operation results in payment, in the great majority of cases of something of value for the opportunity to participate. (People v Psallis, 12 NYS2d 796.)
For another example, see People ex rel. Ellison v Lavin (179 NY 164). In that case it was held that a contest to guess the number of cigars on which the United States would collect taxes during the month of November, 1903, was a lottery, where entrants were required to submit cigar bands to qualify, because chance rather than judgment was the dominating factor in the award of prizes.
There is something clearly analogous in the matter at hand. The critical factor herein is the ability of the public to purchase individual newspaper sheets with the coupon thereon for the price of 17 cents and thereupon "vote” their choice. Logic forces us to conclude that this opportunity to buy single voting coupons in demonstrated large quantities was *878 not in order to vote for "King of the Infants” in an objective sense, but rather in a race prior to deadline to see who could buy the greatest number of votes for their loved one regardless of the contestant’s "regal” attributes.
The court feels that the language in part of the last cited case applies; chance rather than judgment was the dominating factor in the award of prizes. The chance was in purchasing and voting more coupons than others. The single sheets provided the opportunity.
Although the complaint asked for cancellation of the contract and did not plead illegality, this does not divest the court of that right when the agreement is antagonistic to the interests of the public. (Klein v Comenzo Co., 207 NYS2d 739.)
Defendant had raised the factor of consideration in that they contend that the real winner was the infant who was not a financial participant in the event, in that he did not vote, but did receive the financial award.
Certainly the infant herein does not have the legal capacity to handle the funds. The parents or parent will have custody of the funds. The infant cannot indorse a check or understand the meaning of money. Therefore, the argument that the element of consideration is lacking is a specious one at best. Consideration for the chance was clearly present in the purchase of the coupons.
The winners are not chosen on their personal qualities, but rather on whether or not their loved ones can get together enough money to beat the competition in buying sufficient 17 cent coupons. Here also chance rather than judgment was the dominating factor. (People ex rel. Ellison v Lavin, supra.)
Upon all of the above, the court finds that the sale of voting coupons as described herein is void as against public policy.
Judgment in the amount of $1,000 is awarded to the claimant. Since the alleged contest herein has been declared void as against public policy, the award of a prize is nullified.